IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | | |
|---|---|---|
| CRYSTAL G. BARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:13-CV-01512-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | OPINION AND ORDER |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Crystal Barrington appeals the Commissioner's decision denying in part her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Barrington alleged disability beginning September 16, 2009, due to epilepsy, migraines, degenerative disc disease, obesity, depression, anxiety, memory loss, confusion, insomnia, and osteoporosis. Admin. R. 221. In June 2009, Barrington experienced a generalized seizure and began treatment with anticonvulsant medication. Admin. R. 27, 408-10. On September 30, 2009, Barrington reported a second, milder seizure while in bed at night. Admin. R. 27, 412. She stopped working on September 16, 2009, the alleged onset date of her disability. Admin. R. 26, 191.

1 - OPINION AND ORDER

The ALJ applied the five-step sequential process described in 20 C.F.R. § 404.1520, to determine whether Barrington was disabled. Admin. R. 26-33. The ALJ found that, from September 16, 2009 through March 31, 2011, Barrington's combined impairments satisfied the diagnostic and severity criteria for presumptively disabling epilepsy under Listing 11.03 of 20 C.F.R., Part 404, Subpart P, Appendix 1. Admin. R. 26. Accordingly, the ALJ found that Barrington was disabled for the purposes of the Social Security Act for that period. Admin. R. 28.

The ALJ determined that Barrington's medical condition improved with treatment and that by April 1, 2011, her impairments no longer satisfied the severity criteria for Listing 11.03. Admin. R. 29. The ALJ found that Barrington's ability to work continued to be limited, although to a lesser degree, by the combined effects of a seizure disorder, migraines, degenerative disc disease, arthropathy and osteopenia in the lumbosacral spine, obesity, depression, and anxiety. Admin. R. 26, 28.

The ALJ then assessed Barrington's residual functional capacity ("RFC") beginning April 1, 2011. He concluded that she could perform a wide range of work at all exertional levels, provided the work did not involve climbing or concentrated exposure to hazards. Admin. R. 30. The ALJ found that Barrington's past relevant work as an Accounting Clerk and Office Manager did not require work related activities precluded by the limitations in her RFC. Admin. R. 33. Accordingly, the ALJ concluded that Barrington's disability ended by April 1, 2011, and she was not disabled within the meaning of the Social Security Act on or after that date. Admin. R. 33.

Barrington requested review by the Appeals Council and submitted additional evidence created after the ALJ's decision, including a Jackson County Mental Health assessment and chart notes from appointments she had with her neurologist after the ALJ issued his decision. Admin. R.

2. The Appeals Council found that the new evidence related to a later time than the period under consideration by the ALJ. The Appeals Council did not consider the new documentation or include it in the administrative record for Barrington's present claim. Admin. R. 2, 6. When the Appeals Council declined to review the matter, the ALJ's decision became the final agency decision which is now on appeal to this court. Admin. R. 2. 20 C.F.R. § 404.981; *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record, even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Barrington contends the ALJ improperly discounted her credibility and rejected the lay witness statement of Kimberly Fjarli-Owen. Barrington contends the ALJ improperly rejected the opinion of Kevin Sullivan, M.D., the neurologist who treated her for seizures. She contends the ALJ failed to consider the combined effects of her impairments. Barrington contends the ALJ elicited

testimony from the vocational expert ("VE") with hypothetical questions that did not accurately reflect her functional limitations. Finally, Barrington contends the Appeals Council erred by excluding the evidence produced after the ALJ's decision.

## II.    Credibility Determination

In her application, Barrington alleged she could not work because of seizures, depression, anxiety, insomnia, migraines, and osteoporosis. Admin. R. 221. She said each seizure was typically followed by temporary memory loss, difficulty communicating, confusion, and anxiety about dealing with strangers. Admin. R. 243- 44. Barrington suggested her depression and migraines were not adequately treated because medications for those conditions increased the likelihood that she would have seizures. Admin. R. 57-58, 260, 266, 282. She said the medications for insomnia that were available from her health insurance plan had undesirable side effects. Admin. R. 55.

At the hearing, the ALJ noted that in 2009, Barrington had reported as many as three seizures in a week and asked if the frequency of seizures had diminished during 2011. Barrington replied that it had not diminished. Admin. R. 51. She experienced migraines about twice a week. Admin. R. 58. Barrington said that neither the degeneration in her spine nor her weight caused work related limitations. Admin. R. 57, 59. She said her medications slowed her down and caused slurred speech and blurred vision. Admin. R. 56-57, 59-60, 61. Barrington said she could walk about 30 minutes, but then would become unsteady. Admin. R. 61. She could sit for 30 minutes, but then she would develop lower back pain. Admin. R. 62. She said she could lift about ten pounds, but would become unsteady and lose her balance if she tried to carry ten pounds. Admin. R. 63.

The ALJ found that Barrington's statements credibly described her limitations during the period from September 16, 2009 to March 31, 2011. Admin. R. 27. He found that her medical

condition improved with treatment, but continued to impose some degree of limitation after March 2011. Admin. R. 28, 30. The ALJ found that Barrington's statements about the intensity, persistence and limiting effects of her symptoms were not credible insofar as she claimed that her symptoms remained so severe after March 2011 that they imposed limitations that precluded all work. Admin. R. 27, 30.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ must consider all the evidence in the case record when assessing a claimant's credibility, including objective medical evidence, medical opinions, treatment history, daily activities, work history, third party observations of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284; SSR 96-97p, 1996 WL 374186, at *5. Additionally, the ALJ may consider ordinary techniques of credibility evaluation, such as inconsistent statements, testimony that appears less than candid, and an unexplained failure to follow a prescribed course of treatment. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 587, 602-04 (9th Cir. 1989).

The ALJ considered the proper factors here. He found the objective medical evidence and treatment history inconsistent with Barrington's assertion of disabling symptoms persisting past March 2011. Admin. R. 30. The ALJ's finding is supported by the record. Barrington's seizure

disorder is supported by a 24-hour ambulatory EEG performed in January 2010. Admin. R. 398. The remainder of the objective evidence is generally quite benign, so that Barrington's physicians necessarily relied on her subjective history for information about the frequency, severity, and functional consequences of her seizures. As summarized below, the treatment notes show that, after a protracted period of medication trials and adjustments, Barrington's symptoms were controlled to a large extent by her medication regimen. Impairments that can be effectively controlled by medication are not disabling for Social Security purposes. *Warre v. Comm'r of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Dr. Sullivan did a neurology consultation in August 2009 and began administering Barrington's seizure medications. Admin. R. 410. Through 2009 and 2010, Dr. Sullivan tried various combinations of medications. Admin. R. 411-19, 436, 528, 563-65. Barrington had some periods without seizures, but they recurred after changes in her insomnia and depression medications. For example, in March 2010, Barrington reported that she had no seizures except when illness prevented her from taking her medications. Admin. R. 436. In August 2010, Barrington told Dr. Sullivan she had experienced no seizures for five weeks. Admin. R. 563.

In October 2010, Dr. Sullivan began a new anticonvulsant medication called Vimpat. Admin. R. 647. In November, Barrington told her primary care physician that she had not had any seizures since beginning the new medication. Admin. R. 593. In December 2010, she told Dr. Sullivan she had experienced no seizures since starting Vimpat. Dr. Sullivan continued to adjust her medications, however, because her liver function tests were mildly elevated and she continued to report problems with insomnia. Admin. R. 619. In January 2011, Barrington thought she might have had a couple of seizures while adjusting to the medication change. Admin. R. 618.

In June 2011, Barrington told Dr. Sullivan she had not had any seizures since April. Admin. R. 652. Thereafter, Barrington reported infrequent seizures until December 2011, when she inadvertently ran out of one of her medications. Admin. R. 650, 651, 654, 655. Both her doctors indicated that her seizure disorder had improved on the medication regimen including Vimpat. Admin. R. 623, 652. Where the record shows medical improvement from treatment, the ALJ may reasonably doubt a claimant's allegations of ongoing disabling symptoms. *Morgan v. Comm'r* 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

This treatment history and the objective medical evidence support an inference that Barrington's seizures decreased in both frequency and severity by April 2011, and remained under control when she adhered to the prescribed medication regimen. Unlike her early seizures, Barrington's seizures after March 2011 happened infrequently, primarily at night, and did not involve loss of consciousness. Notably, when pressed by the ALJ regarding the frequency of her seizures in the months preceding the hearing in October 2011, Barrington said she could not remember. Admin. R. 52. This evidence supports an adverse inference as to the credibility of Barrington's testimony denying that the frequency of her seizures had diminished and claiming ongoing symptoms that remained as severe as she initially alleged. *Morgan,* 169 F.3d at 599.

With respect to Barrington's claim of debilitating migraines occurring twice a week, the treatment notes reflect a significant history of migraines but no complaints of current symptoms during the relevant period. Admin. R. 350, 351-52, 410, 644. Regarding Barrington's allegation that insomnia prevented her from sleeping more than two hours per night, the only objective evidence is a sleep study during which Barrington slept 6.9 hours and which resulted in no evidence of a sleep disorder. Admin. R. 26, 640-44. Regarding Barrington's allegations of debilitating back pain from

degenerative changes in her spine, the objective imaging revealed only minimal degenerative changes that were unlikely to be clinically significant. Admin. R. 30, 385-86. Such conflicts between a claimant's subjective complaints and the objective medical evidence provide a proper basis to question the claimant's credibility. *Morgan*, 169 F.3d at 600.

Barrington alleged that she continued to have debilitating depression and anxiety. As the ALJ found, Barrington's primary care physician and Dr. Sullivan noted Barrington's complaints regarding anxiety and depression and repeatedly adjusted her medications accordingly. Admin. R. 344, 352, 413, 418, 564. The treatment notes from 2011 show very few, if any, complaints of current depression or anxiety symptoms. Neither physician suggested Barrington should undergo psychiatric evaluation. Neither referred Barrington for any mental health therapy other than the antidepressant medications she was taking. Admin. R. 31, 60. At the hearing in October 2011, Barrington said her depression and anxiety symptoms were improved with her current medications. Admin. R. 31, 60-61. The ALJ reasonably concluded that Barrington's mental health symptoms were adequately managed with medications and did not impose debilitating limitations as she alleged. Admin. R. 31. Where physicians engage in conservative treatment and forego other available therapies for a condition, it supports an inference that the allegedly disabling condition is not as severe as claimed. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

Similarly, the ALJ considered Barrington's assertion that her medications made her feel drowsy, tired, dizzy, and weak. Admin. R. 31, 67-68, 263, 278, 280. The treatment notes from 2011 do not reflect complaints of intolerable side effects from medications. Indeed, the treatment history of repeated adjustments in medications demonstrates that Dr. Sullivan responded to all of Barrington's complaints of side effects by changing medications and dosages. It is reasonable to

infer, as the ALJ did, that Dr. Sullivan would have changed her medications in 2011 if there were signs of debilitating side effects. Admin. R. 31. Instead, Dr. Sullivan chose to continue the prescribed regimen. Admin. R. 31, 650. This supports an inference that Barrington did not experience debilitating side effects after March 2011. The ALJ reasonably concluded any limitation posed by the side effects of Barrington's medications could be accommodated by restricting her exposure to hazards, such as climbing and moving machinery. Admin. R. 31.

Finally, the ALJ found that Barrington's reported daily activities were inconsistent with her alleged degree of impairment. Inconsistencies within the claimant's testimony or between her testimony and conduct can indicate that the claimant is not credible. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ noted that Barrington engaged in typical household and social activities. Admin. R. 32, 230-34, 238, 240-42. While somewhat limited, Barrington has not curtailed her activities to an extent that would suggest complete disability. Notably, Barrington continued to drive and to transport her daughter during the period under consideration. Admin. R. 53-54, 238, 241. She said she did so only when she felt stable, but conceded that she could not predict when seizures would occur. Admin. R. 51, 53-54. The ALJ could reasonably believe that Barrington's activities were not consistent with the degree of limitation she alleged.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to satisfy me that the ALJ did not arbitrarily reject Barrington's subjective statements. His reasoning is clear and convincing. Accordingly, the ALJ's credibility determination was not erroneous. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

\\\

\\\

9 - OPINION AND ORDER

### III.   Lay Witness Statement

Barrington's former coworker, Kimberly Fjarli-Owen, provided a written statement in support of Barrington. Fjarli-Owen said Barrington had changed emotionally and mentally since stopping work. She described one seizure she observed Barrington experience in 2009. She described symptoms of disorientation, slurred speech, poor communication, and poor memory when she spoke on the telephone with Barrington during the recovery period after a seizure episode. Fjarli-Owen did not think Barrington's condition had improved. Admin. R. 284-88.

An ALJ must consider the declarations of a lay witness, but may discount them for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ considered Fjarli-Owen's statement, but found it did not establish disability. Admin. R. 32. He noted that Fjarli-Owen's observations did not specify dates, frequency, or intensity of the symptoms she described. Fjarli-Owen conceded that she saw Barrington at two-month intervals and that her statements about Barrington's activities were based on Barrington's self reporting. Admin. R. 285, 287. The ALJ found that Fjarli-Owen's statement was entitled to diminished weight primarily because it was inconsistent with the medical records and treatment history that showed medical improvement as described previously. Admin. R. 32. The ALJ's reasoning is supported by the record and germane to the witness. Accordingly, his evaluation of the lay witness statement will not be disturbed.

The ALJ also commented that Fjarli-Owen could not be viewed as a disinterested third party whose statement would not be colored by affection for Barrington because of their friendship. Admin. R. 32. This is an improper reason for discounting the statement of a lay witness, because it is not germane to the particular witness. Indeed, such reasoning would exclude statements from

all the friends and family of any claimant. Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent sources of relevant information about the claimant's condition. *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Their statements cannot be discounted solely because of their relationship to the claimant. However, because the ALJ provided a proper basis for discounting Fjarli-Owen's statement independent of her friendship with Barrington, the introduction of the additional commentary was inconsequential. *Batson,* 359 F.3d at 1197.

## IV.    Dr. Sullivan's Opinion

In January 2010, Dr. Sullivan opined that Barrington should not work at heights, around heavy machinery, or in dangerous activities. Admin. R. 393. The ALJ incorporated similar restrictions into the RFC assessment. Admin. R. 30. In August 2010, Dr. Sullivan completed a worksheet indicating that Barrington was incapable of working due to frequent seizures resulting in loss of consciousness followed by confusion, exhaustion, lethargy, and memory loss. Admin. R. 567-70. The ALJ found that Barrington was disabled at the time Dr. Sullivan offered this opinion. Admin. R. 32. He found, however, that the opinion was entitled to less weight in assessing Barrington's limitations after March 2011, because the evidence demonstrated medical improvement resulting in diminished frequency and intensity of her seizures. Admin. R. 32. The ALJ's explanation for giving Dr. Sullivan's opinion diminished weight is clear and convincing and supported by substantial evidence. *Thomas v. Barnhart,* 278 F.3d 948, 757 (9th Cir. 2002).

Barrington also argues that the ALJ improperly rejected Dr. Sullivan's unstated opinion in his treatment notes from June 2011. Pltf's Br. 26-28. Essentially, Barrington argues that the ALJ erred by interpreting these notes differently than she thinks he should have. A careful reading of the

entire record satisfies me that the ALJ interpreted Dr. Sullivan's findings in a reasonable manner, consistent with the record as a whole. The ALJ's rational interpretation must be upheld, even if Dr. Sullivan's notes are susceptible to a reasonable interpretation more favorable to Barrington. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-40.

I also reject Barrington's contention that the ALJ improperly substituted his own medical opinion for that of her physicians. It is the ALJ's duty to consider the medical and opinion evidence and resolve any conflicts or ambiguities. *Tommasetti*, 533 F.3d at 1041; *Thomas*, 278 F.3d at 756-57. Here the ALJ reasonably resolved the conflicts and ambiguities in the medical evidence assisted by the expert opinions of agency medical consultants. Admin. R. 32, 80, 88, 104, 114. In doing so, he fulfilled his duty as the final arbiter of the facts and reached a reasonable conclusion. I find no error.

## V.    Impairments in Combination

Barrington's argument that the ALJ failed to take into account her multiple impairments in combination has no merit. The ALJ's decision reflects that he considered the combined effects of all of Barringtons's impairments, symptoms, and functional limitations. Admin. R. 26-30. The ALJ considered all of Barrington's allegations of functional limitations and accounted for all the evidence she presented of functional limitations. In doing so, the ALJ properly considered the combined effects of her impairments and medications. Barrington does not identify any functional limitation arising from the combination of her impairments and side effects of medications that the ALJ failed to address.

\\\

\\\

## VI.    Vocational Evidence

Barrington contends the ALJ erroneously elicited testimony from the vocational expert with hypothetical assumptions that did not accurately reflect all of her functional limitations.  The ALJ formed his vocational hypothetical based on the RFC assessment he reached.  Barrington contends he should have included additional limitations, including that she would be absent from work at least two times per month.

These additional limitations are supported only by Barrington's subjective statements and opinion evidence that the ALJ discounted.  Her present argument, therefore, simply restates her challenges to the ALJ's evaluation of that evidence, which I have rejected for reasons already given. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  An ALJ is not required to incorporate limitations he found unsupported by the evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1164-65 (9th Cir. 2001).  Accordingly, Barrington's challenge to the vocational expert's testimony must be rejected as well.

## VII.    New Evidence Submitted to the Appeals Council

On August 21, 2012, several months after the ALJ issued his decision, Barrington submitted additional evidence to the Appeals Council with her request for review.  This evidence is not in the record, but was appended to Barrington's submission to the court.  It included Dr. Sullivan's chart notes from office visits after the ALJ's decision, and a mental health assessment by a county mental health provider who did not examine Barrington during the period under review.

The Appeals Council declined to review the ALJ's decision. Admin. R. 1-6.  In doing so, the Appeals Council declined to consider the evidence created after the ALJ's decision because it

did not relate to the period under review by the ALJ. Admin. R. 2. I do not have jurisdiction to review the action of the Appeals Council because it was not a final decision of the agency. *Brewes*, 682 F.3d at 1161; *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

Barrington's reliance on *Brewes* and *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993), is misplaced. Those cases hold that the district court must review the ALJ's decision based on the record as a whole, including evidence produced after the ALJ's decision that was considered by the Appeals Council and made part of the administrative record. *Brewes*, 682 F.3d at 1162; *Ramirez*, 8 F.3d at 1251-52. Here the Appeals Council did not consider the additional evidence or make it part of the administrative record. Accordingly, it is not properly before me in this appeal.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___20th___ day of October, 2014.

Robert E. Jones, Senior Judge
United States District Court